Brandee R. Lynch, brandee@lewishansen.com #13550
*Attorneys for Interpleader Defendant Donna Pasalano*

**LEWIS | HANSEN**
The Judge Building, Suite 410
Eight East Broadway
Salt Lake City, Utah 84111-2239
Telephone: (801) 746-6300
Facsimile: (801) 746-6301

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>    Interpleader Plaintiff<br><br>vs.<br><br>DONNA PASALANO, GEORGE A. PASALANO, AND JESSICA MULVIHILL,<br><br>    Interpleader Defendants. | **DONNA PASALANO'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>**(Oral Argument Requested)**<br><br>Case No. 1:15-cv-00026-BCW<br><br>Hon. Clark Waddoups |

Interpleader Defendant Donna Pasalano, by and through her counsel of record, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1, submits this motion for summary judgment and memorandum in support against Interpleader Defendants, Decedent A. Pasalano and Jessica Mulvihill, regarding Ms. Pasalano's right to the insurance proceeds deposited with this Court. A hearing is requested for this motion pursuant to DUCivR 7-1(f).

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In 1986, Old Line Life Insurance Company issued life insurance policy number 1313348 to George Pasalano Jr. (hereinafter "Decedent") with a face value of $35,000. During his lifetime, Decedent and his first wife had two children, George A. Pasalano (hereinafter "Mr. Pasalano") and Jessica Mulvihill (hereinafter "Ms. Mulvihill"). Later, Decedent and his second wife Donna Pasalano (hereinafter "Ms. Pasalano") had another child. In 2011, Decedent and Ms. Pasalano divorced, and in 2014, Decedent passed away. At the time of Decedent's passing, Ms. Pasalano was clearly listed as primary beneficiary of this policy by Decedent.

Following Decedent's death, Ms. Pasalano filed a claim to these death benefit proceeds with American General Life Insurance Company (hereinafter "AGLIC"), as Old Line Life Insurance had previously merged with AGLIC. On February 11, 2015, AGLIC filed a Complaint for Interpleader in this matter, naming as Interpleader Defendants, Ms. Pasalano, Mr. Pasalano, and Ms. Mulvihill. On March 19, 2015, this Court entered an order granting AGLIC's motion, allowing AGLIC to deposit the sum of $35,000.00, plus accrued interest, with the Court. Thereafter, on July 7, 2015, the parties agreed to stipulate to a dismissal of AGLIC from any future liability in the matter.

Ms. Pasalano seeks an adjudication of her right to receive the death benefit proceeds under the AGLIC policy. As discussed below in more detail, Ms. Pasalano is entitled to summary judgment based on the following:

Decedent named Ms. Pasalano as the sole primary beneficiary of the policy and intended for her to remain as such even after Decedent's divorce from Ms. Pasalano. Interpleader Defendants Mr. Pasalano and Ms. Mulvihill wrongfully assert that the divorce destroys Ms.

Pasalano's status as primary beneficiary. Under Utah law, the divorce between Ms. Pasalano and Decedent Pasalano did not revoke the pre-divorce designation of Ms. Pasalano as the primary beneficiary under said policy. Rather, the undisputed material facts demonstrate that the statutory exceptions to Utah's revocation-upon-divorce rule, at Utah Code Ann. §75-2-804(2), are applicable and controlling in this matter.

It was the intent of the Decedent for Ms. Pasalano to remain as primary beneficiary under said policy even after the parties' divorce. The undisputed material facts demonstrate that Decedent and Ms. Pasalano agreed to maintain Ms. Pasalano as the primary beneficiary on said policy to protect Ms. Pasalano's property interests in the event of Decedent's death. This agreement was stipulated to in open court by both Decedent and Ms. Pasalano, and subsequently approved and recorded in the court-executed Decree of Divorce. Both the Decree of Divorce and Amended Decree of Divorce are "court orders" that demonstrate an intent between the divorced individuals, Ms. Pasalano and Decedent, contrary to automatic revocation of Decedent's designation of Ms. Pasalano as primary beneficiary under to policy.

Moreover, this intent is further demonstrated by the undisputed material facts that Decedent continued to pay on the policy after the divorce; Decedent took no action to remove Ms. Pasalano as primary beneficiary after the divorce; and said policy was the only policy in place at the time of the parties' divorce and Decedent's death.

## II. STATEMENT OF ELEMENTS AND UNDISPUTED MATERIAL FACTS

### A.    Statement of Elements

A federal court sitting in diversity applies the substantive law of the forum state. *Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund,* 343 F.3d 1311, 1314 (10th Cir. 2003).

Under Utah's Uniform Probate Code, a divorce generally operates to revoke any revocable disposition of property made by a divorced individual to the individual's former spouse in a governing instrument. Utah Code Ann. §75-2-804(2)(a)(i). Specifically, § 75-2-804(2) states in pertinent part:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>
> (a) revokes any revocable:
>
>> (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the individual's former spouse[.]

"Disposition of property" includes a transfer of an item of property or any other benefit to a beneficiary designated in a governing instrument. Utah Code Ann. § 75-2-804(1)(a). "Governing instrument" is defined as "a governing instrument executed by the divorced individual before the divorce of the individual's marriage to the individual's former spouse" and includes an insurance policy. Utah Code Ann. § 75-2-804(1)(d); § 75-1-201(19).

There are key exceptions to this revocation-upon-divorce rule as Utah Code Ann. § 75-2-804(2) provides that a divorce does not revoke a revocable disposition of property to the individual's former spouse if there is a (1) governing instrument; (2) court order; or (3) contract that relates to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment. When one of these exceptions exists, there is no revocation of a revocable disposition of property to a former spouse such as, designation of a

former spouse as beneficiary to death benefit insurance. *See e.g. Am. Gen. Life Ins. Co. v. Jenson*, No. CIV. 11-5057-JLV, 2012 WL 848158 (D.S.D. Mar. 12, 2012) (unpublished).

**B.    Undisputed Material Facts**

1.    Old Line Life Insurance Company issued policy number 1313348 to Decedent on May 1, 1986, with a face value of $35,000.00 (hereinafter "Policy"). *See* true and correct copy of Policy[1], attached in Appendix as <u>Exhibit 1</u> and incorporated herein by reference; *see also* Complaint in Interpleader at ¶ 8 [Docket 2].

2.    After issuance of the policy, Old Line Life Insurance Company merged with AGLIC. *See* Ex. 1 in Appendix; *see also* Complaint in Interpleader at ¶ 10 [Docket 2].

3.    On October 9, 1994, Ms. Pasalano married Decedent. *See* Affidavit of Donna Pasalano in Support of Motion for Summary Judgment, at ¶ 5, filed concurrently herewith and incorporated herein by reference.

4.    Thereafter, Decedent submitted a change of beneficiary form to AGLIC, which was recorded on October 30, 2000. *See* true and correct copy of Beneficiary Verification, attached in Appendix as <u>Exhibit 2</u>, and incorporated herein by reference.

5.    Through this change of beneficiary, Decedent named Ms. Pasalano, his then-wife, as primary beneficiary. *Id; see also* Aff. of Donna Pasalano at ¶¶ 9-10.

6.    Through this change of beneficiary, Decedent named Mr. Pasalano and Ms. Mulvihill, his adult children from a previous marriage, as contingent beneficiaries. *Id.*

---

[1] In accordance with Rule 5.2 of the Federal Rules of Civil Procedure, personal data identifiers have been redacted from the exhibits to this Motion.

7. Throughout the years, Decedent continued to maintain Ms. Pasalano as primary beneficiary on the Policy and AGLIC sent Decedent paperwork confirming that Ms. Pasalano was the primary beneficiary. *See* Aff. of Donna Pasalano, at ¶¶ 11-15.

8. The Policy defines "beneficiary" as follows:

> The beneficiary is as shown in the application unless changed. The owner will be the beneficiary if none survives the insured.

> *See* Ex. 1 in Appendix. at Pg. 3.

9. For a change of beneficiary, the Policy states as follows:

> While the insured is alive, the owner may change the beneficiary or ownership by written notice to us [American General]. When we record the change, it will take effect as of the date the owner signed the notice, subject to any payment we make or other action we take before recording.

> *See id.*

10. The premiums for this AGLIC policy were paid by allotment each month, which were taken out of Decedent's retirement pay from the US Military and administered by the Defense Finance and Accounting Services. *See* true and correct copy of Decedent's Retiree Account Statement, attached in Appendix at <u>Exhibit 3</u> and incorporated herein by reference.

11. On October 21, 2011, Ms. Pasalano and Decedent's divorce was finalized in the action entitled *Donna Lynn Pasalano v. George Pasalano, Jr.* Case No. 094701935 before Judge Michael G. Allphin of the Second Judicial District Court, State of Utah, County of Davis. *See* true and correct copy of Decree of Divorce, attached in Appendix at <u>Exhibit 4</u> and incorporated herein by reference; *see also* Aff. of Donna Pasalano, at ¶ 22.

12. During this divorce action, Ms. Pasalano and Decedent stipulated that Ms. Pasalano would be awarded the martial residence and all equity therein. *See* Aff. of Donna

Pasalano, at ¶ 17; *see also Ex. 4 in Appendix.* at ¶ 6(A)(i), (iii); *see also* true and correct copy of Findings of Fact and Conclusions of Law, attached in Appendix at <u>Exhibit 5</u> at ¶ 13(A)(i), (iii), and incorporated herein by reference.

13. Ms. Pasalano and Decedent also stipulated that Decedent would pay the mortgage on the martial property for eight years, "during which period of time [Decedent] shall maintain mortgage guarantee or other death benefit insurance to protect [Ms. Pasalano] as beneficiary in the case of [Decedent's] death." *See* Aff. of Donna Pasalano, at ¶¶ 18-19*; see also Ex. 4 in Appendix.* at ¶ 6(A)(ii); *see also* Ex. 5 in Appendix, at ¶ 13(A)(ii).

14. In lieu of receiving a regular cash payout for her interest in alimony and property, the parties agreed that Decedent would maintain the mortgage for eight years and secure that agreement with maintaining Ms. Pasalano as his primary beneficiary on his death benefit insurance. *See* Aff. of Donna Pasalano, at ¶¶ 18-21; *see also Ex. 4 in Appendix.* at ¶¶ 6(A)(ii), 9(A); *see also* Ex. 5 in Appendix, at ¶¶ 13(A)(ii), 16(A).

15. This stipulation was an integral part of the alimony and property settlement between Ms. Pasalano and Decedent. *See id.*

16. Decedent was represented by counsel during his divorce. *See* Aff. of Donna Pasalano, at ¶ 24; *see also* Ex. 4 in Appendix.

17. After the divorce, Decedent continued to maintain Ms. Pasalano as primary beneficiary on his AGLIC death benefit insurance. *See* Aff. of Donna Pasalano, at ¶¶ 23, 26.

18. The AGLIC Policy was the only policy in place at the time of the parties' divorce. *See id.*, at ¶ 27.

19.      Approximately five months after the parties' divorce, Ms. Pasalano and Decedent revisited various provisions in the Decree of Divorce and an Amended Decree of Divorce was entered.  *See* true and correct copy of Amended Decree of Divorce, attached in Appendix as Exhibit 6 and incorporated herein by reference.

20.      The language instructing Decedent to maintain death benefit insurance to protect Ms. Pasalano as beneficiary remained unchanged.  *See id.* at ¶ 6(A)(ii); *see also* Aff. of Donna Pasalano, at ¶¶ 28-30.

21.      Decedent was represented by counsel during the amendment to the Decree of Divorce.  *See* Ex. 6 in Appendix; *see also* Aff. of Donna Pasalano, at ¶31.

22.      After entry of the Amended Decree, Decedent continued to maintain Ms. Pasalano as primary beneficiary on his AGLIC death benefit insurance.  *See* Aff. of Donna Pasalano, at ¶ 32.

23.      On January 22, 2014, Decedent passed away in Arizona.  *See* true and correct copy of Certificate of Death, attached in Appendix as Exhibit 7 and incorporated herein by reference.

24.      The Policy was in place and in effect at the time of Decedent's death.  *See* Aff. of Donna Pasalano, at ¶¶ 35, 38; *see also* Complaint in Interpleader [Docket 2].

25.      Ms. Pasalano is the primary beneficiary under the Policy.  *See id.*

26.      Ms. Pasalano promptly notified AGLIC of Decedent's death and made a claim with AGLIC for distribution of Decedent's death benefits.  *See* Aff. of Donna Pasalano, at ¶ 37.

27.      The Policy was the only death benefit insurance in place at the time of Decedent's death.  *See* Aff. of Donna Pasalano, at ¶ 36.

28.     There was no mortgage guarantee in place at the time of Decedent's death on the former marital residence. *See id.*, at ¶ 39.

## IV. ARGUMENT

### A. SUMMARY JUDGMENT IS APPROPRIATE IN THIS ACTION

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when "no genuine dispute as to any material fact" exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. 56(a).  Upon this showing, the burden shifts to the nonmoving party, who "must set forth specific facts [by affidavit or other evidence] showing that there is a genuine issue for trial" and cannot simply rest on allegations in the pleading. *Am. Gen. Life Ins. Co. v. Jenson*, No. CIV. 11-5057-JLV, 2012 WL 848158, at *4 (D.S.D. Mar. 12, 2012) (unpublished) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  Courts repeatedly have held that adjudication of entitlement to insurance benefits between beneficiaries is amenable to summary judgment. *See e.g., Malloy v. Malloy*, 2012 UT App 294, ¶ 1, 288 P.3d 597, 598.

### B. PURSUANT TO KEY EXCEPTIONS, THE PARTIES' DIVORCE DOES NOT REVOKE DECEDENT'S CLEAR ELECTION TO NAME MS. PASALANO AS PRIMARY BENEFICIARY UNDER THE POLICY

Under Utah's Uniform Probate Code, a divorce generally operates to revoke any revocable disposition of property made by a divorced individual to the individual's former spouse in a governing instrument.  Utah Code Ann. §75-2-804(2)(a)(i).  The Utah legislature defines "governing instrument" as "a governing instrument executed by the divorced individual

before the divorce of the individual's marriage to the individual's former spouse" and includes an insurance policy. Utah Code Ann. § 75-2-804(1)(d); *see also* Utah Code Ann. § 75-1-201(19). The rationale behind the revocation-upon-divorce rule is that a property owner was unlikely to benefit his former spouse and had he thought about it, probably would have revoked the pre-divorce beneficiary designation. *See Stillman v. Teachers Ins. and Annuity Ass'n Coll. Ret. Equities Fund,* 343 F.3d at 1314, 1318.

However, there are key exceptions to this revocation-upon-divorce rule. Utah Code Ann. § 75-2-804(2) provides that a divorce does not revoke a revocable disposition of property to the individual's former spouse if:

> [P]rovided by the express terms of a governing instrument, a court order, or a contract relating to the division of marital estate made between the divorced individuals before or after the marriage, divorce, or annulment. Utah Code Ann. § 75-2-804(2) (emphasis added).

In other words, divorce alone does not terminate a former spouse's rights as beneficiary of an insurance policy if a property settlement or divorce decree evidences a clear intent to the contrary. *Farmers New World Life Ins., Co., v. Allen,* No. 2:09-CV-6 TS, 2011 WL 1657756, at *1 (D. Utah Apr. 29, 2011) (unpublished).

In *Am. Gen. Life Ins. Co. v. Jenson,* the US District Court, applying South Dakota law[2], found that for the exception to the revocation-upon-divorce rule to apply, the claimed beneficiary

---

[2] At SDCL § 29A-2-804, South Dakota has enacted the ***same*** revocation-upon-divorce rule as Utah which provides in pertinent part:

> (b) *Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate* made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:

would have to present proof that the decedent actually intended her to be the beneficiary of the life insurance policy despite their divorce. *Am. Gen. Life Ins. Co. v. Jenson*, No. CIV. 11-5057-JLV, 2012 WL 848158, at *15 (D.S.D. Mar. 12, 2012). The *Jenson* Court stated that to carry this burden, the claimed beneficiary would have to show more than mere inaction by the decedent to change the designation after divorce, or self-serving statements made by the decedent to the beneficiary that were not witnessed by others. *Id.*

In *Jenson*, the claimed beneficiary, the decedent's ex-wife, relied on oral statements made by the decedent to a financial advisor indicating that the decedent wanted to maintain his ex-wife as his beneficiary under the life insurance policy despite their divorce. *Id.* Even though the ex-wife did not have a separate writing from the decedent evidencing his intentions, the *Jenson* Court found that decedent's oral statements to the financial advisor satisfied the ex-wife's burden. *Id.* The *Jenson* Court went on to state that the policy at issue gave the decedent no notice that he needed to do anything else to carry out his wishes, as there was no specific reference to the revocation-upon-divorce rule. *Id.* at *16. Rather, the policy stated that once the decedent designated a beneficiary, his designation would remain in full force and effect until he notified the carrier in writing of a contrary intention. *Id.*

In the end, the *Jenson* Court held that a writing indicating the decedent's express intent would be sufficient to rebut the effects of the revocation-upon-divorce rule, but that it was *not the exclusive way* to rebut the statute. *Id.* at *17. The Court found that the decedent's oral expressions to a third-party to maintain his ex-wife as beneficiary satisfied her burden of proof

---

(1) Revokes any revocable (i) disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument … (emphasis added).

and in doing so, the Court strove for a more liberal rule of construction of the revocation-upon-divorce rule in order to do justice to the decedent's intent. *Id.* at \*10.

Other courts have held that for the revocation-upon-divorce exceptions to apply, there must be terms stating that the beneficiary will remain as the designated beneficiary despite divorce. *See Buchholz v. Storsve*, 740 N.W.2d 107, 112, 2007 S.D. 101 ¶ 15. In *Buchholz*, the Supreme Court of South Dakota affirmed summary judgment in favor of decedent's widow that sought revocation of the decedent's beneficiary designation in her retirement plan to that of decedent's ex-husband. *Id.* at ¶ 1. Neither the parties' divorce decree nor the related findings of fact and conclusions of law addressed decedent's retirement plan and only contained a provision stating, "each of the parties [is] awarded all of his or her personal property." *Id.* at ¶ 3. As such, the Court stated that if a donor wishes to retain a former spouse as the beneficiary post-divorce, the donor must evidence this intention in writing and comply with policy terms. *Id.* at ¶ 16.

Whether this Court decides to follow either *Jenson* (liberal construction of intent) or *Buchholz* (express intent in writing) the undisputed material facts demonstrate that the exceptions to the revocation-upon-divorce rule are applicable and controlling in this matter.

During their marriage, Decedent executed a change of beneficiary, naming Ms. Pasalano as primary beneficiary under the Policy and continued to maintain Ms. Pasalano as such. [UMF 3-5, 7, 10]. This Policy was the only death benefit insurance that Decedent maintained during the parties' marriage. [*Id.*].

More importantly, during their divorce, Decedent and Ms. Pasalano entered into a property settlement agreement, whereby Decedent agreed to maintain Ms. Pasalano as the beneficiary under the Policy for at least eight years following the divorce in order to protect Ms.

Pasalano's interest in the division of marital estate. [UMF 12-14]. This agreement was a *contract related to the division of marital estate made between the divorced individuals*, Decedent and Ms. Pasalano, before their divorce. *See Lincoln National Life Insurance Co. v. Ruybal*, No. 12-CV-02413-REB-MJW, 2014 WL 3560293, at *4 (D. Colo. July 18, 2014) (noting the parties' separation agreement was a contract, and that the "primary goal in interpreting a contract is to effectuate the intent of the parties"); *see also Merrick Young Inc. v. Wal-Mart Real Estate Bus. Trust*, 2011 UT App 164, ¶ 17, 257 P.3d 1031, 1036.

Both Decedent and Ms. Pasalano agreed that in lieu of Ms. Pasalano receiving a regular payout for alimony and property, Decedent would pay the mortgage on the marital residence for at least eight years. [UMF 13-14]. The parties further agreed to secure this particular division of marital estate by having Decedent maintain Ms. Pasalano as primary beneficiary on Decedent's death benefit insurance. [*Id.*]. This specific provision was an integral part of the division of marital estate, as each party gained and gave up certain contract rights including, Decedent's right to change Ms. Pasalano's status as beneficiary under the Policy for at least eight years post divorce. [UMF 15]. This agreement gave Ms. Pasalano an indefeasible contract right to the policy proceeds in the event Decedent passed away within the eight years, post divorce period. *See e.g. Lincoln Nat. Life Ins. Co. v. Johnson*, 38 F. Supp. 2d 440, 450 (E.D. Va. 1999) (citing cases).

This agreement was made orally in open court and memorialized and approved in "express terms" by the Decree of Divorce, *i.e.* a court order. [UMF 11, 13]. As was required in *Buchholz,* this contract/court order evidences Decedent's intent in writing that his divorce from Ms. Pasalano would not terminate her status as primary beneficiary under the Policy. [*Id.*].

After the parties' divorce, Decedent fulfilled this contract/court order by maintaining Ms. Pasalano as the primary beneficiary and paying on the death benefit insurance. [UMF 17, 18]. Moreover, Decedent continued to be agreeable to the contract/court order even after the parties' revisited and reworked several terms of the Decree of Divorce, almost five months post-divorce. [UMF 19, 20]. As in *Jenson*, the Policy gave Decedent no notice that he needed to do anything else to carry out his wishes, as there is no specific reference to the revocation-upon-divorce rule in the Policy; rather, the Policy states that once the owner, Decedent, designates a beneficiary, his designation would remain in full force and effect until he notified American General in writing of a contrary intention. [UMF 8, 9].

Ms. Pasalano's continued status as primary beneficiary to the Policy after the parties' divorce was not simply an oversight Decedent failed to change upon divorce; rather, it is clear that Decedent contemplated this issue both during and after the divorce, as he was represented by counsel and had to verify that he understood and agreed to the terms of the settlement agreement including, the provision about Ms. Pasalano's continued status as primary beneficiary to the Policy. [UMF 16, 21]. Decedent repeatedly affirmed Ms. Pasalano's status as primary beneficiary, as he continued to maintain the premium with her as primary beneficiary more than two years post-divorce, until his death. [UMF 10, 17, 22]. Decedent had ample opportunity to change Ms. Pasalano's status as primary beneficiary, the fact that he did not, speaks to his intent to carry out the contract/court order.

Although the Decree of Divorce did not specify a policy number, the Policy at issue is the only death benefit insurance that Decedent maintained for over 27 years and, thus, is the one he had intended to maintain for Ms. Pasalano's benefit in the event of his death. [*See* UMF 1, 7, 13,

18, 24, 25, 27, 28]. Moreover, Interpleader Defendants Mr. Pasalano and Ms. Mulvihill cannot produce any admissible evidence to negate the fact that the Policy at issue is the death benefit insurance referred to in the contract/order. *See* Fed. R. Civ. 56(c)(1)(B); *see also Travelers Ins. Co. v. Lewis*, 531 P.2d 484 (Utah 1975) (noting ample authority for proposition that provision of a divorce decree controls the disposition of insurance policy proceeds between contending beneficiaries).

Simply put, the undisputed material facts demonstrate that Ms. Pasalano has a contractual right to remain as the sole primary beneficiary under the Policy even after the parties' divorce, and therefore, the revocation-upon-divorce rule is rebutted.

### V. CONCLUSION

This Court should grant Ms. Pasalano's Motion and find that Mr. Pasalano is entitled to the proceeds of the Policy as a matter of law.

WHEREFORE, Ms. Pasalano respectfully requests the following relief,

1. The Court granting her motion for summary judgment as there is no genuine dispute of material fact that Defendant Donna Pasalano is the primary beneficiary entitled to the insurance proceeds from the AGLIC Policy, and is entitled to judgment as a matter of law, including the face value, plus any accrued interest, pre-and post-judgment interest, attorney fees, costs and any other available relief;

2. The Court declaring that any other competing claims for the insurance proceeds from the AGLIC Policy are denied including, those of Interpleader Defendants, George A. Pasalano and Jessica Mulvihill;

3.  Ordering the clerk of the court to pay the proceeds of the AGLIC Policy insuring the life of Decedent, totaling $35,000.00, plus accrued interest, and currently on deposit in the registry of the court, to Defendant Donna Pasalano; and

4.  For such other and further relief as this Court deems just and proper.

DATED the 18th of September, 2015.

LEWIS | HANSEN

*/s/Brandee R. Lynch,*
*Attorneys for*
*Interpleader Defendant Donna Pasalano*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th of September, 2015, I have caused a true and correct copy of the forgoing **DONNA PASALANO'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (Oral Argument Requested)** to be served via electronic filing to:

Reuben H. Cawley
Reuben.Cawley@wilsonelser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
300 South 4th St., 11th Floor
Las Vegas, NV 89101-6014
*Attorneys for Interpleader Plaintiff*

Mary C. Rutledge
rutledgelawoffice@gmail.com
Rutledge Law Office PC
192 Payson, UT 84651
*Attorneys for Interpleader Defendants, George A. Pasalano and Jessica Mulvihill*

LEWIS | HANSEN

*/s/Brandee R. Lynch,*
*Attorneys for*
*Interpleader Defendant Donna Pasalano*